**Riley C. GARNER, Trustee of Shelby County, Appellee,**

v.

**RHEA REALTY CORPORATION, Appellant.**

Court of Appeals of Tennessee, Western Section.

Aug. 17, 1971.

Certiorari Denied by Supreme Court Dec. 20, 1971.

Albert C. Rickey, Rickey, Shankman, Agee & Harpster, Memphis, for appellant.

Leonard Pierotti, Memphis, for appellee.

CARNEY, Presiding Judge.

Rhea Realty Corporation has appealed from a non-jury judgment of the Circuit Court of Shelby County, Tennessee. The Circuit Judge held that Riley C. Garner, Trustee of Shelby County, was legally entitled to re-assess real estate located in Memphis, Tennessee, owned by Rhea Realty Corporation for the tax years 1966, 1967, and 1968 under authority of T.C.A. Section 67–1201 et seq. The subject property, a lot located at 1782 South McLean Street in Memphis, Tennessee, on which was located a large industrial type building, was assessed for the year 1964 for $72,400. The annual tax was $1,600. In 1965 Shelby County instituted a land reappraisal program conducted by the Roy Wenzlick Company and valued the land at $7,600. By neglect no value was placed on the improvements or building located on the land. The annual tax for 1965, 1966, 1967, and 1968 was $167.96.

The appellant, Rhea Realty Corporation, did not occupy the building but leased it to the National Manufacturing Company. By the terms of the lease National Manufacturing Company was obligated to and did pay the annual taxes levied against the property. Rhea Realty Corporation had no knowledge of the underassessment. However, solicitor for Rhea Realty Corporation concedes in writing before this Court that National Manufacturing Company was agent for Rhea Realty Corporation and all knowledge of the greatly reduced assessment held by National Manufacturing

Company was imputable to Rhea Realty Corporation. National Manufacturing Company, through its official, Mr. M. A. Saunders, Jr., paid the tax based on the greatly reduced assessment in 1965, 1966, 1967, and 1968.

In 1969 the Tax Assessor recognized the mistake and requested the trustee to re-assess the property as provided by T.C.A. Section 67–1201 et seq. Rhea Realty Corporation was cited by the Trustee under T.C.A. Sections 67–1204 and 67–1205. After a hearing, the Trustee re-assessed the property involved at a much higher figure so as to include the value of the improvements. The taxpayer, Rhea Realty Corporation, refused to pay and asked for a hearing by the Chairman of the Shelby County Court under the authority of T.C.A. Section 67–1214.

Honorable C. W. Baker, chairman of the Shelby County Quarterly Court, on November 14, 1969, upheld the action of the Trustee and assessed the value of the property to include the improvements for the years 1966, 1967, and 1968.

Rhea Realty Corporation refused to pay the back assessment and the Trustee filed suit in the General Sessions Court of Shelby County. After trial and judgment, the cause was appealed to the Circuit Court of Shelby County. There the case was submitted on written briefs and stipulation before the Trial Judge without a jury. The Trial Judge in a trial de novo found in favor of the Trustee and gave judgment against Rhea Realty Corporation in the amount of $5,901.36. From this judgment the appeal has been taken to this Court.

It is conceded by counsel on both sides that the decision of this Court hinges upon a construction of T.C.A. Sections 67–1201 and 67–1202 which we copy as follows:

"67–1201. Grounds for back assessment or reassessment.—Any property or properties included in this chapter and chapters 6 to 8, inclusive of this title and in § 67–510 shall be back assessed or reassessed for the period provided by law, viz.:

(1) When the same have been omitted from or escaped taxation.

(2) When the same has been assessed by the assessor or computed by the board of equalizers, at less than its actual cash value by reason of any fraud, deception, misrepresentation, misstatement, or omission of full statements of the owner of the property of his agent or attorney.

(3) When the owner of the property connives at or fraudulently procures or induces an assessment to be made by the assessor or computed by the board of equalizers at less than its actual cash value; provided, however, in all cases where there is a grossly inadequate assessment, fraud shall be presumed.

67–1202. Back assessment of previously assessed property—Connivance or fraud.—It shall not be lawful for any back assessment or reassessment to be made against any property which has been assessed by the regularly constituted assessing authorities; provided, however, that nothing in this section shall prevent the back assessment or reassessment of any property, real or personal, which shall have entirely escaped assessment and taxation, or shall have been inadequately assessed by reason of the connivance or fraud of the tax debtor."

It is also conceded by both parties that Mr. M. A. Saunders, Jr., vice president and treasurer of National Manufacturing Company, was not guilty of any fraud in connection with the underassessment. He testified that he did not know just when he learned that the property was underassessed but that it was after at least one year's tax at the lower assessment had been paid and probably at the end of the second year that one of the auditors for his company called his attention to the greatly reduced assessment. Mr. Saunders knew that a reappraisal of the property in Shelby County was being carried on. He

did nothing to increase the assessment but merely acquiesced in the underassessment from year to year. He did nothing to conceal the underassessment. He communicated with no one in the Tax Assessor's office or the Trustee's office with reference to the underassessment. If he connived, it was by doing and saying nothing.

The heart of the Trial Court's decision is to be found in the last two paragraphs from which we quote as follows:

"It is the opinion of the Court that one can connive at an error without any actual or constructive, direct or indirect fraud.

The Court finds that both the owner and the lessee within the meaning of the statute connive at this monumental error and that, on account of such connivance, the back assessment has been legally made."

Under T.C.A. Section 67–605 the basis of valuation is " . . . its sound, intrinsic and immediate value, for purposes of sale between a willing seller and a willing buyer without undue consideration of speculative values . . ." The improvements thus are to be considered in arriving at the value but are not to be assessed separately. The improvements represent only one of the elements which make up the value.

Admittedly, in the case at bar Mr. M. A. Saunders, Jr., vice president and treasurer of National Manufacturing Company, did nothing, directly or indirectly, to influence the assessor to make a reduced assessment of the lot in question. Therefore, the ultimate question is, does the failure of a taxpayer to notify the taxing authorities of an apparent underassessment constitute connivance within the meaning of the statute?

We have not been cited to any reported Tennessee case defining the meaning of the word "connivance." From Cyclopedic Law Dictionary, Second Edition, by James C. Cahill, published by Callaghan and Company of Chicago, 1922, several definitions or constructions of the word "connivance" are given as follows:

"CONNIVANCE. An agreement or consent, indirectly given, that something unlawful shall be done by another.

A married party's corrupt consenting to evil conduct, of which afterwards he complains. 2 Bish.Mar. & Div. Sec. 203.

Connivance differs from condonation, though the same legal consequences may attend it. Connivance necessarily involves criminality on the part of the individual who connives; condonation may take place without imputing the slightest blame to the party who forgives the injury. Connivance must be the act of the mind before the offense has been committed; condonation is the result of a determination to forgive an injury which was not known until after it was inflicted. 3 Hagg.Ecc. 350.

An error of judgment not involving a willingness to have the delinquency committed is not connivance. 10 Jur. 829. Nor is a watching of the guilty parties, without interference. 109 Mass. 408."

From Webster's Seventh New Collegiate Dictionary based on Webster's Third New International Dictionary, 1963, we copy the following definition of connive:

"1: to pretend ignorance of or fail to take action against something one ought in duty to oppose 2a: to be indulgent or in secret sympathy: WINK b: to cooperate secretly or have a secret understanding 3: Conspire, Intrigue"

See also Volume 17 A.L.R.2d beginning at page 334 for a discussion of connivance in divorce cases.

It would unduly prolong this opinion to quote at length from the many cases throughout the United States discussing the word "connivance." None of them involve facts similar to the facts of this case.

We must determine its meaning from its use in the two sections of the Code, 67–1201 and 67–1202, quoted above. For emphasis we copy from Section 67–1201 as follows:

"(3) When the owner of the property connives at or fraudulently procures or induces an assessment to be made by the assessor . . ."

From Section 67–1202 we copy as follows:

". . . or shall have been inadequately assessed by reason of the connivance or fraud of the tax debtor."

■ We interpret "connivance" under these two sections to mean conduct by the taxpayer similar to but short of actual fraud which caused or induced the low assessment. The Legislature, if it had so intended, could very easily have provided in the statute that the taxpayer was legally obligated to report underassessments to the taxing authorities. Instead, by 67–1202 the Legislature provided that underassessment alone was not grounds for reassessment *unless* the property was underassessed by *connivance* or *fraud* of the taxpayer. Connivance as used in the statutes means some conscious conduct on the part of the taxpayer calculated to result in a reduced assessment. In the case at bar Mr. Saunders did nothing.

■ We hold that under T.C.A. Section 67–1202 where property has been assessed below its actual cash value by the regularly constituted assessing authorities, failure of the taxpayer to report such underassessment, even though grossly underassessed, does not constitute connivance within the meaning of the statute. Accordingly, the assignment of error is sustained; the judgment of the lower Court is reversed; and the costs of this appeal taxed against the appellee.

MATHERNE and NEARN, JJ., concur.